**Joyce M. FULTZ, Plaintiff–Appellant,**

v.

**Larry Edward GILLIAM,
Defendant–Appellee.**

No. 90–6473.

United States Court of Appeals,
Sixth Circuit.

Argued July 19, 1991.

Decided Aug. 21, 1991.

George E. Copple, Jr. (argued and briefed), Nashville, Tenn., for plaintiff-appellant.

Robb S. Harvey (argued and briefed), Farris, Warfield & Kanaday, Nashville, Tenn., for defendant-appellee.

Before MERRITT, Chief Judge, KEITH, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

In this civil action arising under the Federal Wiretapping Act, 18 U.S.C. sections 2511(1)(c), (d); 2520, Plaintiff–Appellant Joyce Fultz challenges the district court's order granting summary judgment in favor of the defendant, her former husband, on statute of limitations grounds. The case at bar presents us with a question apparently of first impression before the Courts of Appeals: whether each playing of a single recording of a wrongfully intercepted communication gives rise to a new cause of action under sections 2511(1)(c) or (d) of the Act. The district court answered this question in the negative. For the reasons that follow, we believe this conclusion is incon-sistent with the language and purpose of the Act as it has been heretofore interpreted. Moreover, we believe the court below likewise misapplied the theory it drew upon to reach its conclusion. Because we find a material question of fact remains unresolved, we will reverse the order of summary judgment and remand the case for trial.

I.

Joyce Fultz and Larry Gilliam were husband and wife until 1985. Fultz and Gilliam agree with the factual findings of the district court which were as follows:

> On two Saturdays in 1985 prior to March 24, 1985, a recording device was placed on the business telephone line in Gilliam's home by the parties' pastor, Paul Shields, in Gilliam's presence. Recordings were made of some conversations between Gilliam's then-wife, plaintiff Joyce Fultz, and her boyfriend, Jerry Gillespie. On March 24, 1985, Fultz went to her church to talk with Gilliam, her brother, Jimmy Johnson, and the pastor, Paul Shields. After Fultz denied she had been having an affair with Gillespie, Gilliam told her he had recorded the conversations between Gillespie and herself and had played the recordings to her brother and Shields immediately before Fultz met the others at the church. Gilliam then showed Fultz the tape and started to turn on the tape player, but Fultz ran out of the room and did not hear any of the recordings.

> Sometime between March 24, 1985 and July, 1985, Fultz, in the presence of Gilliam, told their three children that she was having an affair with Jerry Gillespie and that their father had recorded some of her conversations with Gillespie. Later the same day Fultz repeated the same information to her children, two cousins, and her mother. Gilliam testified at deposition that Fultz's confession to the children occurred within a couple of weeks after the meeting at the church.

> The complaint for divorce was filed in state court in Williamson County[, Tennessee,] on April 22, 1985. According to

deposition testimony of Gilliam and one of the three children, Melanie Gilliam, Fultz and Gilliam separately discussed the tape recordings with Melanie later in 1985 before the divorce decree was entered. The decree of divorce was entered on July 29, 1985.

Joyce Fultz filed the Complaint in this action on August 15, 1989, seeking $10,000 plus costs and fees, as well as injunctive relief.

Fultz's Complaint did not seek recovery for the disclosure of the conversations to Shields and Johnson; rather, Fultz alleged that Gilliam, in addition to wrongfully intercepting and recording the conversations, later played a portion of the tapes for Melanie Gilliam on or about August 16, 1987. The parties dispute this allegation.

Fultz contended the alleged conduct violated the prohibition against such interceptions stated in 18 U.S.C. sections 2511(1)(a) and (b) and also constituted both an intentional use and an intentional disclosure of the recordings in violation of 18 U.S.C. sections 2511(1)(c) and (d). In support of her claim, Fultz cites Melanie's deposition testimony and states that Melanie told her mother on August 19, 1987 that Gilliam had played the tape for her. Gilliam denies that he at any time played any portion of the tape recording to Melanie. He asserts that he gave the tapes containing the conversations to his sister in May, 1985 and has not possessed them since that time.

Gilliam moved for summary judgment arguing that the action was filed outside the two-year statute of limitations in section 2520(e) of the Act because the claims related back to the original wiretap and disclosure in 1985. In the alternative, Gilliam maintained that he lacked the knowledge necessary to make his interception of Fultz's conversations, or his subsequent disclosure and/or use of the recordings, violations of the Wiretapping Act.

On October 23, 1990, the district court issued its memorandum and order. Its analysis focused exclusively on the statute of limitations argument stating that

"in 1985 Fultz clearly knew that Gilliam had 'intercepted' an oral communication (in violation of [18 U.S.C. section 2511(1)] subsection (a)) and had used a device affixed to a wire to intercept an oral communication (in violation of subsection (b)). Moreover, Fultz knew that Gilliam had 'disclosed' the communications to 'other person[s]' (in violation of subsection (c)) and had 'used' the contents of the phone communication (in violation of subsection (d))."

The court reasoned that the "alleged 'playing' of the tape recordings [in 1987]—is precisely the same action that Fultz knew had occurred on or before March 24, 1985" and thus, the statute of limitations began to run upon her discovery of the earlier violation. Because Fultz had not filed her action until August, 1989, the court found it time-barred.

Finding no case law on the point, the district judge drew upon defamation law for guidance:

In libel cases several jurisdictions apply a 'single publication rule,' which limits a plaintiff to a single cause of action based on the circulation of copies of an edition of a book, newspaper or periodical. Generally these jurisdictions view the date of the *first* publication as the accrual date. Thus, as Fultz knew in 1985 that the recordings had been played to at least two persons, she cannot prevail by waiting four years to bring a complaint based on the allegation that Gilliam played the same recorded phone conversations more recently to a different person.

The court ultimately concluded that "[t]he fact that Gilliam may have played the recordings again in 1987 ... [was] irrelevant." Accordingly, the court granted summary judgment in favor of Defendant Gilliam. This timely appeal followed.

II.

On appeal, Fultz concedes that her claims under sections 2511(1)(a) and (b) are not timely because she became aware of the interceptions and recordings in late March of 1985. Accordingly, the only issue remaining before us is whether her remaining claims under sections 2511(1)(c) and (d) are likewise barred.

## A.

This Court applies a *de novo* review to a grant of summary judgment by the district court. *Brooks v. American Broadcasting Companies, Inc.,* 932 F.2d 495, 500 (6th Cir.1991); *see also EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). In reviewing a grant of summary judgment, the court views the available evidence in a light most favorable to the non-moving party, according that party any reasonable inferences the facts will support. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986); *accord Blakeman v. Mead Containers,* 779 F.2d 1146, 1150 (6th Cir. 1985). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *accord Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir. 1988).

Our review of the authorities throughout the circuits reveals a paucity of cases on this novel legal issue. Accordingly, the proper starting point for our inquiry is the language of the statute itself. *Communications Workers of America v. Beck,* 487 U.S. 735, 764, 108 S.Ct. 2641, 2658, 101 L.Ed.2d 634, 658 (1988) (Blackmun, J., concurring in part and dissenting in part).

## B.

The statutes at issue are found in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. sections 2510–2521 (1988) (commonly known as the Federal Wiretapping Act). At the time Gilliam allegedly played the tapes to Melanie,[1] section 2511(1) provided:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication ...

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)....

18 U.S.C. § 2511(1). In addition to its criminal penalty, the Act provides a civil cause of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter...." *Id.* § 2520.[2] In 1986, Congress generally amended section 2520, adding a provision limiting to two years the period of time within which such civil actions might be brought. 18 U.S.C.

---

1. In 1986, Congress enacted several amendments to the prohibitory clauses of Title III. Pub.L. 99–508, § 101(c)(1)(A), (d)(1), (f)[ (1) ] (1986). Prior to these amendments, and at the time Gilliam and Shields initially made the recordings at issue, the statute forbade "willful" interception, disclosure, or use of wire and oral communications only. The amendments that produced the present text became effective January 20, 1987.

2. Like § 2511, this section was amended in 1986 to bring electronic communications within the scope of the statute and to restructure the computation of damages. Pub.L. 99–508 (1986).

§ 2520(e).[3] The limitations clock begins to run on a claim at "the date upon which the claimant first has a reasonable opportunity to discover the violation." *Id.*

■ "When the intent of Congress is expressed in 'reasonably plain terms,' a court must ordinarily treat that language as conclusive." *United States v. Underhill*, 813 F.2d 105, 111 (6th Cir.1987) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982)), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *see also United States v. Jones*, 542 F.2d 661, 667 (6th Cir.1976). Nearly fifteen years ago, in *United States v. Jones*, 542 F.2d 661, 667 (6th Cir.1976), we examined a case presenting facts very similar to those now before us to hold that no implied interspousal immunity exception exists to insulate a husband from the criminal penalties of the Wiretapping Act arising from his interceptions of his wife's telephone conversations. *Id.* at 673; *cf. Simpson v. Simpson*, 490 F.2d 803 (5th Cir.1974). In *Jones*, one of our earliest cases construing the statute at bar, we found "[t]he language of 18 U.S.C. § 2511(1)(a) and (d) ...

straightforward and comprehensive." *Jones*, 542 F.2d at 666.

■ Quoting the Supreme Court of the United States in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), we observed that " '[t]he purpose of the legislation ... was effectively to prohibit ... all interceptions of oral and wire communications, except those specifically provided for in the Act....' " *Jones*, 542 F.2d at 666, and concluded that the text of section 2511(1)(a) "quite clearly expresses a blanket prohibition on all electronic surveillance" not specifically authorized by the Act. *Id.* at 667. Amendments to section 2511(1) enacted since our decision in *Jones* have not materially changed the character of the provisions under consideration. The syntax of sections 2511(1)(c) and (d) parallels that in section 2511(1)(a) and carries the same semantic import. Nothing in the language of these subsections indicates to us that Congress intended a more narrow scope in prohibiting disclosure and use of wrongfully intercepted material than it did in prohibiting the interceptions themselves.[4]

---

3. In his brief on appeal, Gilliam questions whether this statute may be applied retroactively to his conduct, suggesting that perhaps we should borrow from one of two state limitations periods that are "most closely analogous" to the statute in question. We decline Gilliam's invitation on this point. As with the other 1986 amendments to the Wiretapping Act, § 2520(e) became effective January 20, 1987, approximately seven months before Gilliam is alleged to have played the tape for his daughter. Accordingly, there is no threat of retroactive application: if Gilliam played the tape to Melanie at the time alleged, any cause of action this conduct have created under § 2511(1)(c) or (d), falls squarely within the federal statute.

4. For reasons that will be explained, *infra*, we conclude that the alleged 1987 playing of the tapes gives rise to a new action under § 2511(1)(c) (prohibition on disclosure) subject to a new two-year limitations period. Our analysis directs the same conclusion regarding § 2511(1)(d) (prohibition on use): each use of the tapes constitutes a separate violation subject to a new limitations period. Accordingly, we will also hold that Appellant's action under § 2511(1)(d) is not time-barred. This conclusion alone necessitates reversal of the district court's judgment. However, we take this opportunity to note an additional important issue.

The construction of § 2511(1) suggests to us that Congress intended to distinguish between disclosures and other uses that do not involve actual disclosure. For example, we can envision instances where an individual might threaten to divulge illegally intercepted communications in order to coerce money or actions from a party to the communication. The mere threat for the purpose of extortion, without actual disclosure, would, it seems, constitute use of the tapes in violation of subsection (d). Another Circuit has found "use" in the defendant's oral recitation of the contents of the intercepted recordings. *See Bess v. Bess*, 929 F.2d 1332 (8th Cir.1991). This apparent distinction in § 2511(1) leaves uncertain precisely what sort of conduct constitutes "use" of the communications violating subsection (d) as opposed to "disclosure" violating subsection (c). Fultz's complaint advances claims for both disclosure and use. Because these issues were neither raised before the district court nor before us, we leave it for the district court to determine whether the facts of this case implicate both subsections (c) and (d) for purposes of imposing liability, bearing in mind that the interpretation the court adopts should not render either subsection superfluous. *See, e.g., Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836, 848 (1988).

Sections 2511(1)(c) and (d) plainly forbid *all* intentional disclosures and uses of the contents of intercepted communications where the individual knows or should know that the source of the material is an unauthorized interception. The language of these sections prohibiting even the endeavor to disclose or use the material serves to reinforce this conclusion. By prohibiting all intentional uses and disclosures of unauthorized interceptions by an individual with knowledge of the violation, subsections (1)(c) and (d) strengthen subsection (1)(a) by denying the wrongdoer the fruits of his conduct. They additionally insure protection for the wiretap victim from third parties, unrelated to the wrongdoer, who, having access to the material and a reasonable basis to know its source, might desire to disclose the information for their own purposes.

In construing statutory language "[e]mphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress," *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345, 1351 (1940), and here Congress' purpose in enacting the Wiretapping Act amplifies our interpretation. "Title III has as its dual purpose (1) *protecting the privacy of wire and oral communications*, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." Sen.Rep. No. 1097, 90th Cong., 2nd Sess., *reprinted in* 1968 U.S.CODE CONG. & ADMIN.NEWS 2112, 2153 (emphasis added); *see also United*

*States v. Underhill*, 813 F.2d 105, 111 (6th Cir.), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *United States v. Jones*, 542 F.2d 661, 668 (6th Cir.1976); *United States v. Turk*, 526 F.2d 654, 658–59 (5th Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976); *In Re Grand Jury Proceedings, Harrisburg, Pennsylvania*, 450 F.2d 199, 202 (3d Cir. 1971), *aff'd sub nom.*, *United States v. Egan*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). "[A]lthough Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern." *Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) (Footnote omitted).

The right of privacy, recognized at common law in a large majority of American jurisdictions, reflects an individual's "right to be let alone." RESTATEMENT (SECOND) OF TORTS § 652A comment a. As generally interpreted, it encompasses, *inter alia*, an individual's entitlement to be free from unreasonable intrusions upon his seclusion and unreasonable publicity concerning his private life. *Id.* § 652A. The prohibitions Congress incorporated into section 2511(1) of Title III protect both of these interests first, by prohibiting the surreptitious interception of private communications in the first instance—a highly offensive physical intrusion on the victim's private affairs, *see id.* § 652B and comment b.—and second, by circumscribing the dissemination of private information so obtained.[5] While Title III permits disclosure of lawfully obtained wiretap material in

---

5. The difference in formulations between the common law right to be free from publicity about one's private life and the statutory prohibition on disclosure and use of illegally intercepted communications further illuminates the broad scope Congress intended for the Wiretapping Act. According to the Restatement:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. RESTATEMENT (SECOND) OF TORTS § 652D. The commentary to this section makes clear that

"'Publicity' ... differs from 'publication,' as that term is used in § 577 in connection with liability for defamation. 'Publication' is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* comment a. §§ 2511(1)(c) and (d) make no exception for disclosures to individuals or small groups or inconsequential uses. In this sense, disclosure and use are more similar to "publication" than to "publicity," providing some foundation for the district court's analogy.

limited instances, *see* 18 U.S.C. § 2517 (law enforcement officers), it "implies that what is not permitted is forbidden...." *United States v. Dorfman,* 690 F.2d 1230, 1232 (7th Cir.1982). It seems beyond doubt that the release of *unlawfully* obtained wiretap material to any third party under the circumstances presented by this case is clearly banned by the Act.

"Congress' recognition of the victim's privacy as an end in itself recognizes that the invasion of privacy is not over when the interception occurs, but is compounded by disclosure." *Providence Journal Co. v. Federal Bureau of Investigation,* 602 F.2d 1010, 1013 (1st Cir.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980) (citation omitted). Each time the illicitly obtained recording is replayed to a new and different listener, the scope of the invasion widens and the aggrieved party's injury is aggravated. The functional consequence of the interpretation adopted by the district court and urged upon us by Gilliam is to endorse this outcome, converting an aggrieved party's failure to timely pursue her claim against an initial disclosure into a license, freeing the wrongdoer to communicate the material to an ever-expanding audience. *Cf., e.g., Dorfman,* 690 F.2d at 1232 (granting appeal of district court order unsealing wiretap evidence exhibits: if the order were unappealable "the privacy that the defendants claim to be entitled to under Title III would be gone forever as soon as the media began disseminating their news stories...."). This cannot be the result Congress intended. The text of the Wiretapping Act plainly indicates, and its purpose necessitates, that a new and discrete cause of action accrue under section 2511(1)(c) each time a recording of an unlawfully intercepted communication is played to a third party who has not yet heard it.[6]

■ Reiterating the district court's reasoning, Gilliam contends that playing the tapes for Melanie, if it constitutes a disclosure at all, should be treated in a fashion similar to the circulation of a single edition of a book, newspaper, or periodical for the purposes of applying the statute of limitations. This reasoning fundamentally misapplies the single publication rule as it has developed in the area of defamation law, as even a cursory reading of the Restatement passage on the topic reveals.

Section 577A of the Second Restatement of Torts recites the single publication rule as follows:

Single and Multiple Publications

(1) Except as stated in Subsections (2) and (3), *each of several communications* to a third person *by the same defamer is a separate publication.*

In *Rodgers,* an individual, LeVine, under investigation for receipt of stolen property unlawfully intercepted the conversations of two police officers executing a search warrant at his home. LeVine subsequently gave the tapes of the conversations to his attorney, Wood. Wood, in turn, disclosed the contents of the tapes on several occasions in connection with his representation of LeVine. The officers sued Wood under § 2511(1)(c) and were awarded summary judgment. Among his several claims on appeal, Wood urged that he should be subject to the damages provision in effect at the time the recordings were made. The conversations were intercepted in 1985, prior to the effective date of the 1986 amendments to § 2520. The Seventh Circuit rejected this argument stating that Wood "committed the violations that are the subject of this suit when he *disclosed* the tapes in 1987, not when the tapes were made by LeVine." *Rodgers,* 910 F.2d at 449 n. 3.

**6.** Cases in two other circuits have treated disclosures and uses occurring well after the initial interception as new offenses subject to individualized consideration. *See Bess v. Bess,* 929 F.2d 1332 (8th Cir.1991); *Rodgers v. Wood,* 910 F.2d 444 (7th Cir.1990).

In *Bess,* the Eighth Circuit considered an estranged husband's interception of his wife's telephone conversations. The plaintiff became aware the recordings had been made in 1983. In the ensuing divorce proceeding in July, 1985, the defendant introduced facts acquired from tapes in order to establish marital misconduct by his wife. Plaintiff filed her suit in January, 1987, and the magistrate awarded damages only for each of the twelve days of interception. On appeal, the Eighth Circuit awarded the plaintiff additional statutory damages finding that defendant's recitation during the divorce proceeding was "use of the intercepted contents represent[ing] additional prohibited conduct in violation of 18 U.S.C. § 2511." *Bess,* 929 F.2d at 1334.

(2) A single communication *heard at the same time by two or more* third persons is a single publication.

(3) Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar or aggregate communication is a single publication.

(4) As to any single publication,

(a) only one action for damages can be maintained;

(b) all damages suffered in all jurisdictions can be recovered in one action; and

(c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions.

RESTATEMENT (SECOND) OF TORTS § 577A (emphasis added). The highlighted passages above illuminate the important distinction between the first disclosure of the tape and the alleged second disclosure. Gilliam initially disclosed the tape by playing it for Johnson and Shields at the same time. Under subsection (2) above, this would constitute a single publication as to each of the listeners and would require the Plaintiff to consolidate her claims into one cause of action seeking damages for both disclosures at once. By contrast, when Gilliam allegedly played the tape to Melanie it constituted a second communication to a third person which subsection (1) classifies as a separate publication.

The tapes in this case are more analogous to a motion picture than to a book or periodical. In order to communicate their content, Gilliam had to "exhibit" them to the listener. While one exhibition is a single publication as to each of the members of the audience, the multiple exhibitions that transpired here are indisputably separate publications. *Id.* § 577(A)(3) and comment c, illustration 5. Thus, correctly applying the district court's analogy leads only to the conclusion that Fultz possessed a proper, separate cause of action against Gilliam for the disclosure to Melanie.

Gilliam makes much of the fact that Fultz told her children and other relatives that she was having an affair and that Gilliam had recorded some of her conversations with her boyfriend. Gilliam suggests, without citing authority, that this alone should bar Fultz's action. We disagree. The legislative history of sections 2511(1)(c) and (d) does state that "[t]he disclosure of the contents of an intercepted communication that had already become 'public information' or 'common knowledge' would not be prohibited," Sen.Rep. No. 1097, 90th Cong., 2nd Sess. at 93, *reprinted in* 1968 U.S.CODE CONG. & AD-MIN.NEWS 2112, 2181; however, the record before us does not establish that the contents of the conversations between Fultz and her boyfriend had become publicly or commonly known. Fultz's statements to her children and family members indicates only that the *existence* of the tapes may have become public information. Nowhere are we told exactly what Fultz and Gillespie spoke about in their intercepted private conversations, and it is this very privacy that the ban on disclosure and use is meant to protect. If the contents of the conversations have become known to others who have not themselves heard the tapes, it is a matter for a jury to determine whether this information had become "public" or "common knowledge." [7] We are unwilling to deprive Fultz of a statutorily granted cause of action on so thin a factual record.

The limitations clause of section 2520 provides a plaintiff two years from the date

---

**7.** Whether an aggrieved party's own disclosure of the contents of a taped conversation vitiates as a matter of law that party's cause of action against another individual for disclosure of the same information at a later date presents a separate question. Certainly, § 2511(1)(c) does not forbid the aggrieved party from revealing the contents of his or her own private communications, but at least one court has found that § 2511(1)(c) "unqualifiedly" bars the person conducting the illegal wiretap from disclosing the contents. *In Re Grand Jury Proceedings, Harrisburg, Pennsylvania,* 450 F.2d 199, 202 (3d Cir.1971), *aff'd sub nom., United States v. Egan,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). We do not decide this issue because, as stated above, the factual record before us does not indicate that this type of disclosure has occurred.

upon which the aggrieved party could reasonably have discovered the violation of the Act within which to file a complaint. 18 U.S.C. § 2520(e). If Gilliam played the tape for his daughter on August 16, 1987 as Fultz alleges, this action would constitute a disclosure to another person of the contents of a communication obtained through an interception in violation of the Act. For the foregoing reasons, we are convinced this conduct must give rise to a new cause of action despite Gilliam's earlier disclosure of the tapes to Johnson and Shields. Because Fultz filed her Complaint on August 15, 1989, within two years of her discovery of the alleged violation, her action is not time-barred. However, the parties continue to dispute whether Gilliam indeed played the tapes to Melanie—a genuine issue of material fact. Accordingly, we reverse this judgment of the district court and remand the case for a trial on the merits.

### III.

Despite the conclusion reached above, Gilliam urges us to nonetheless affirm the order of summary judgment in his favor. He contends he cannot be held liable because he lacked the requisite knowledge to violate section 2511(1)(c). That section forbids disclosure, or attempts to disclose, the contents of protected communication, by an individual "knowing or having reason to know that the information was obtained through the interception ... in violation of this subsection." 18 U.S.C. § 2511(1)(c). He argues that he neither knew or had reason to know that intercepting his wife's telephone calls violated the law. Additionally, he contends that Fultz has failed to prove he acted intentionally as the statute requires. These arguments are plainly without merit.

In the first place, Gilliam advances ignorance of the law—not of the fact of his conduct. The district court found, and Gilliam concedes, that he knew of and at least acquiesced in placing the wiretap on his phone line to intercept Fultz's conversations. Gilliam places considerable emphasis on the assertion that "not even the Circuit Courts are in agreement whether interspousal wiretapping is a violation of the Federal Wiretapping Act or is excluded." The Supreme Court recently stated

> [t]he general rule that ignorance of the law or a mistake of the law is no defense to criminal prosecution is deeply rooted in the American legal system. Based on the notion that the law is definite and knowable, the common law presumed that every person knew the law.

*Cheek v. United States,* —— U.S. ——, ——, 111 S.Ct. 604, 609, 112 L.Ed.2d 617, 628 (1991) (citations omitted).[8] Notwithstanding Gilliam's assertions to the contrary, the unlawfulness of interspousal wiretapping has been a settled point of law in this Circuit since our decision in *Jones, supra.* Accordingly, Gilliam cannot prevail on this point.

Second, whether Gilliam acted intentionally when he intercepted Fultz's conversations or when he allegedly played the tapes for Melanie is a determination for the jury to make. *See Farroni v. Farroni,* 862 F.2d 109, 112 (6th Cir.1988) (construing willfulness requirement of pre-amendment section 2511(1)). The jury will have the opportunity to consider this contention upon remand.

### IV.

For the foregoing reasons, we REVERSE the order of the district court granting summary judgment in favor of defendant and REMAND the case for trial.

---

**8.** While recognizing that the case before us is not a criminal prosecution, we note that Congress drafted Title III as both a criminal and civil statute. Accordingly, this statement from the Court provides useful guidance in our analysis of the statute.