Connie LOMBARDO, and Steven R. Myron, M.D., Plaintiffs,

v.

Robert G. FORBES and Forcum & Forbes, LLP, Defendants.

No. 1:00–CV–14.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 21, 2002.

---

See also 2002 WL 448473.

David A Gunter, Dean Mead, Viera, FL, for Connie Lombardo, Steven R Myron, MD, plaintiffs.

Robert G Forbes, Forcum and Forbes, Hartford City, for Robert G Forbes, Forcum & Forbes LLP, defendants.

## *MEMORANDUM OF DECISION AND ORDER*

WILLIAM C. LEE, Chief Judge.

On March 11, 1999, Plaintiffs Connie Lombardo nee Ragle[1] (hereinafter "Ragle") and Steven Myron's (hereinafter "Myron") filed the present action against the defendants, Robert G. Forbes and the law firm of Forcum & Forbes, LLP (hereinafter "Forbes," collectively) alleging violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (hereinafter "Title III") and its Indiana equivalent, Ind.Code § 35–33.5–5–4. Ragle and Stevens allege that Forbes disclosed and used the contents of unlawfully recorded telephone conversations between the plaintiffs in the course of Ragle's divorce from John Lombardo (hereinafter "Lombardo").

Presently before the Court are cross-motions for summary judgment. Defendants moved to dismiss the action on March 7, 2000. This motion was converted to a motion for summary judgment on March 15, 2000. On May 30, 2000, Plaintiffs responded to Forbes' motion for summary judgment and filed their own summary judgment motion. Forbes re-

---

1. Since this action was filed, Connie Lombardo has assumed the name of Connie Ragle, presumably her maiden name. Consequently, this Order refers to Plaintiff Ragle as "Ragle." Moreover, Plaintiff Ragle is now married to Plaintiff Myron.

sponded on June 15, 2000 and Plaintiffs filed one last reply on June 27, 2000.

At a hearing on the motion held on November 14, 2001,[2] the Court granted the parties sixty days to perform additional discovery. On February 12, 2002, Plaintiffs filed a "Supplemental Brief in Support of Pending Motions for Summary Judgment" together with a motion to consolidate this case with a companion case, *Lombardo, et al. v. Lombardo, et al.*, No. 1:99–CV–95 ( N.D. Ind. filed Mar. 11, 1999), now pending in this Court and arising from the same incidents. For the following reasons, Plaintiffs' Motion for Summary Judgment with respect to the federal claims will be DENIED. Plaintiffs' state claims will be BIFURCATED and STAYED pending the outcome of the proceedings on the federal claims. Defendants' Motion for Summary Judgment will be GRANTED in part, and DENIED in part. Plaintiffs' motion to consolidate the two cases will be taken under advisement.

## FACTUAL BACKGROUND

During the relevant time period in 1996 and 1997, Plaintiff Ragle was married to John Lombardo. (Ragle Aff. ¶ 2 [3]). In October 1996, Lombardo moved out of their marital home. (*Id.*). In approximately December 1996, unbeknownst to Ragle, Lombardo installed a tape-recording device in their marital home and recorded telephone calls between his wife and others, including Plaintiff Myron. (*Id.* at ¶ 6; Myron Aff. ¶ 4). The recorded telephone conversations revealed that Ra-

gle and Myron were having an affair. (Trans. p. 223–24).

On March 14, 1997, Lombardo personally served divorce papers on his wife at her place of employment. (Ragle Aff. at ¶ 3). The next day, Lombardo moved back into the marital home without Ragle's consent. At that time, Lombardo indicated that he knew Ragle's attorney's name, though she had never disclosed this information to him. Lombardo also indicated that he had evidence that he would use against Ragle in their divorce proceedings. (*Id.* at ¶ 4).

On March 16, 1997, while Lombardo was away from the house, Ragle discovered a cassette tape recorder in her basement. The recorder was connected to a phone jack. (*Id.* at ¶ 5). Shortly thereafter, Lombardo confronted Ragle because he discovered the tape recorder missing. During this confrontation, Lombardo asked for the recorder back and quoted conversations Ragle had had with others on the telephone. He told Ragle he had been taping her conversations for months and that he had several copies of the tapes. (*Id.* at ¶ 6). He also indicated that he intended to send copies of the tape recordings to Ragle's business associates, customers, and family members if Ragle did not accede to all of his demands in connection with the divorce. (*Id.* at ¶ 7). In response to Lombardo's threats, Ragle obtained an order from the Jay Circuit Court on March 20, 1997, enjoining Lombardo from disseminating or disclosing the con-

2. The hearing on the summary judgment motions was considerably delayed because, on August 16, 2000, this Court stayed the proceedings pending (1) the outcome of a case being appealed to the United States Supreme Court, *Bartnicki v. Vopper*, 200 F.3d 109 (3rd Cir.1999), which might have had bearing on the outcome of this case; and (2) the outcome of the criminal proceedings against Lombardo. On August 15, 2001, the case was re-

opened and the summary judgment motions reinstated.

3. In this Order, the Court refers to the affidavits of Connie Ragle and Steven Myron as "Ragle Aff." and "Myron Aff.," respectively. The deposition testimony of John Lombardo is referred to as "Lombardo Dep." "Trans." refers to the trial transcript of the divorce proceedings between Ragle and Lombardo.

tents of "any unlawfully recorded telephone conversations." (*Id.* at ¶ 8).

Lombardo did, in fact, disclose the contents of the tapes to Julie Myron, wife of Plaintiff Steven Myron. (*Id.* at ¶ 9; Myron Aff. ¶¶ 2, 4; Lombardo Dep. p. 18). At the final divorce proceedings, Forbes elicited the testimony of Julie Myron as to the contents of the tapes. (Ragle Aff. at ¶ 9; Trans. p. 221, ln. 2–4). Lombardo and Ragle were divorced in January 1998.

Thereafter, Ragle and Myron brought this suit. Throughout the course of this litigation, and the related litigation in *Lombardo v. Lombardo,* Forbes has quoted from Julie Myron's testimony in the original divorce proceeding. On April 10, 2000, Plaintiffs filed an amended complaint adding claims that these additional disclosures were also violations of Title III.

## DISCUSSION

### I. Standard of Review

"Summary judgment is proper only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Gonzalez v. Ingersoll Milling Machine Co.,* 133 F.3d 1025, 1031 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(c)). While the moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, if any, which it believes demonstrate the absence of a [genuine issue of] material fact, there is nothing in Rule 56 that requires a moving party to negate an essential element of an opponent's claim for which the opponent will bear the ultimate burden at trial." *Bank of Illinois v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168 (7th Cir.1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986)). Rather, the standard for granting summary judgment requires the district court to grant summary judgment if the record before us "could not lead a rational trier of fact to find for the non-moving party." *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The burden is therefore on the non-movant to set forth "specific facts showing that there is a genuine issue for trial." *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(e)). "In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Debs v. Northeastern Illinois Univ.,* 153 F.3d 390, 394 (7th Cir. 1998). Substantive law determines which facts are "material"; that is, those facts which might affect the outcome of the suit under the governing law. *See McGinn v. Burlington Northern R.R. Co.,* 102 F.3d 295, 299 (7th Cir.1996). Consequently, a dispute over irrelevant or unnecessary facts does not preclude summary judgment. *See Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999).

The non-moving party may not rest on the pleadings in opposing a motion for summary judgment. *See Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1,* 147 F.3d 535, 540 (7th Cir.1998). Rather, the non-moving party must produce some evidence sufficient to show that a genuine issue of material fact exists. "Futhermore, a 'party needs more than a scintilla of evidence ... to defeat summary judgment.' " *Adusumilli v. City of Chicago,* 164 F.3d 353, 361 (7th Cir.1998) (quoting *Senner v. Northcentral Technical College,* 113 F.3d 750, 757 (7th Cir.1997)). Thus, a summary

judgment determination is essentially an inquiry as to whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

## II. Federal Claims

### A. Title III Background

Section 2511 of Title III states in relevant part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

. . .

(c) intentionally discloses or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing for having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

. . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(a),(c),(d).

Title III also includes an explicit private right of action:

Except as provided in Section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

In this case, Plaintiffs allege that Forbes committed three separate violations of Title III. First, Plaintiffs claim Forbes deliberately elicited the testimony of Julie Myron as to the contents of the unlawfully recorded tapes. Second, Plaintiffs allege that Forbes disclosed the contents of the illegally recorded telephone conversations in documents filed in response to Plaintiffs' Motion for Summary Judgment in the companion case to this case, *Lombardo, et al. v. Lombardo, et al.,* No. 1:99–CV–95 (N.D.Ind. filed Mar. 11, 1999). Finally, Plaintiffs claim Forbes disclosed the contents of the tapes in documents filed in relation to the case now before the Court. Plaintiffs argue that these acts were all in violation of the disclosure and use provisions of Title III, 18 U.S.C. §§ 2511(1)(c) and (d).

### B. Disclosure During the Lombardo–Ragle Divorce Proceeding

At the outset, the Court notes that section 2511 of Title III includes a different mental state requirement for disclosure and use violations, *see* 18 U.S.C. §§ 2511(1)(c) and (d), than for interception violations, *see* 18 U.S.C. § 2511(1)(a). To prove that a defendant has disclosed or used unlawfully recorded communications in violation of Title III, a plaintiff must show that the defendant did so "knowing or having reason to know that the information was obtained through [unlawful] interception of a wire, oral, or electronic communication ...." *See* 18 U.S.C. §§ 2511(1)(c) and (d); *see also Thompson v. Dulaney,* 970 F.2d 744 (10th Cir.1992). In contrast, a plaintiff need only show that the defendant did, in fact, intentionally (as

opposed to inadvertently) intercept electronic communications to prove an interception violation of Title III. *See* 18 U.S.C. § 2511(1)(a); *see also Fultz v. Gilliam,* 942 F.2d 396 (6th Cir.1991); *Campiti v. Walonis,* 611 F.2d 387 (1st Cir.1979).

In this case, Forbes argues that he did not have the requisite mental state for disclosure and use liability in connection with his disclosures at the divorce proceeding. That is, Forbes claims he did not know that recording the telephone conversations was unlawful because he believed Lombardo's actions were protected by an interspousal immunity exception to Title III. Such an exception would exempt spouses from Title III's prohibitions on intercepting one another's telephone conversations within the marital home. Therefore, he did not disclose or use the recordings "knowing or having reason to know that the information was obtained through [unlawful] interception."

■ In *Rice v. Rice,* 951 F.2d 942 (8th Cir.1991), the Eighth Circuit considered a similar issue. In that case, the attorney had encouraged his client to tape her spouse's conversations on the belief that such recordings were legal under an interspousal immunity exception to Title III. The Eighth Circuit later held that no such exception existed, but found that the attorney could not be held liable for his part in the recordings. The *Rice* court found that because the circuits had been split on the issue at the time the attorney had given the advice, it would be unfair to hold the attorney liable. Here, although this Court believes that no interspousal immunity exception exists, *see Lombardo, et al. v.*

*Lombardo, et al.,* No. 1:99–CV–95, —— F.Supp.2d —— (N.D.Ind. March 21, 2002) (order granting in part and denying in part plaintiffs' motion for summary judgment), in the Seventh Circuit, the law has been unclear as to whether an interspousal immunity exception to Title III exists. *See id.* Accordingly, it is plausible that Forbes would believe his disclosures of the tapes to be legal.

Plaintiffs, for their part, have produced a copy of the Protective Order entered by the Jay Circuit Court on March 20, 1997 enjoining Lombardo from disclosing the contents of the recordings. Presumably, this order could have put Forbes on notice that the tapes may have been unlawfully recorded.[4] Accordingly, a genuine issue of material fact exists as to whether Forbes knew or should have known the tapes Lombardo recorded were unlawfully intercepted. Both Plaintiffs' and Defendants' summary judgment motions on these claims will be denied.[5]

### C. Disclosures Related to the Current Litigation

■ Plaintiffs claim that Forbes' disclosure and use of the contents of the unlawfully recorded telephone conversations in connection with this case and its companion case, *Lombardo v. Lombardo,* constitute violations of Title III in addition to the disclosures during the original divorce proceeding. Ordinarily, additional disclosures would constitute additional causes of action. *See Fultz v. Gilliam,* 942 F.2d 396, 402 (6th Cir.1991) ("The text of [Title III] plainly indicates, and its pur-

---

4. The Court notes that the Jay Circuit Court order only enjoins Lombardo from disclosing "any unlawfully recorded tapes." It does not, however, expressly state that the tapes Lombardo made were unlawfully recorded. Moreover, it does not enjoin Forbes from disclosing or using the unlawfully recorded tapes.

5. Forbes also argues that his actions are protected by the good faith exception to Title III liability and that the tapes were admissible in the divorce court for impeachment purposes. Because the Court has already found a genuine issue of material fact sufficient to preclude summary judgment, it is not necessary to discuss these arguments in detail.

pose necessitates, that a new and discrete cause of action accrue ... each time a recording of an unlawfully intercepted communication is played to a third party who has not yet heard it.") However, in this case, Forbes' original disclosure—during the Ragle–Lombardo divorce proceedings—made the contents of the tapes part of a public record.[6] The legislative history of 18 U.S.C. §§ 2511(1)(c) and (d) indicates that "[t]he disclosure of the contents of an intercepted communication that had already become 'public information' or 'common knowledge' would not be prohibited." Sen. Rep. No. 1097, 90th Congress, 2nd Sess. at 93, *reprinted in* 1968 U.S.Code Cong. & Admin. News 2112, 2181. Accordingly, Forbes' additional disclosures in the course of this litigation do not constitute separate violations of Title III. Forbes' summary judgment motion on those claims will be granted; Plaintiffs summary judgment motion will be denied.

### III. State Claims

Because the state claims present novel questions of state law, they will be bifurcated from the federal claims in this case and stayed pending the outcome of any proceedings on the federal claims.

### IV. Motion to Consolidate

Plaintiffs have also moved to consolidate this case with its companion case, *Lombardo, et al. v. Lombardo, et al.*, No. 1:99–CV–95 ( N.D. Ind. filed Mar. 11, 1999). Defendants have argued that the two cases should remain separate because they pose different legal issues. As a result, the motion to consolidate the cases will be taken under advisement at this time.

6. It is also interesting to note that plaintiff Ragle, herself, filed the record of the original divorce proceeding—which contained Julie

### CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Summary Judgment with respect to the federal claims is hereby DENIED. Plaintiffs' state claims are BIFRUCATED and STAYED pending this Courts decision on the federal claims. Defendants' Motion for Summary Judgment is GRANTED in part, and DENIED in part. Plaintiffs' motion to consolidate this case with *Lombardo, et al. v. Lombardo, et al.*, No. 1:99–CV–95 ( N.D. Ind. filed Mar. 11, 1999) is taken under advisement.

Myron's testimony regarding the contents of the tapes—with the Indiana Court of Appeals in the course of appealing the divorce order.