**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William T. WULIGER, Defendant–**
**Appellant.**

**No. 92–3061.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1992.
Decided Dec. 22, 1992.

2. *See maj. op.* at 1494.

Scott J. Glick (argued and briefed), Annette K. Tamblyn, and Daniel S. Schneider, U.S. Dept. of Justice, Crim. Div., DC, for plaintiff-appellee.

William T. Wuliger (argued and briefed), Wuliger, Fadel & Beyer, defendant-appellant pro se.

John S. Pyle (briefed), Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, for amicus curiae.

Before: KENNEDY and MILBURN, Circuit Judges; and WELLFORD, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendant William T. Wuliger appeals the judgment of conviction and sentence for multiple violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, ("Title III" or the "Act"), 18 U.S.C. §§ 2510–2520. A jury convicted the defendant under section 2511(1)(d) for intentionally using the contents of telephone conversations recorded in violation of section 2511(1)(a) on three separate occasions. The jury acquitted the defendant of a fourth use count under section 2511(1)(d) and of four charges under section 2511(1)(c) involving the intentional disclosure of the contents of wrongfully recorded telephone conversations. Defendant filed a motion to acquit after verdict which was denied. The District Court fined defendant $5,000 and placed him on probation for two years provided that he surrender his license to practice law and serve a thirty-day home detention. Execution of the sentence, other than the fine, was stayed pending disposition of this appeal. For the reasons stated below, we REVERSE the defendant's conviction and REMAND the case to the District Court for a new trial consistent with this opinion.

I.

Defendant, an Ohio attorney, was retained on April 4, 1989 by David Ricupero to represent him in a divorce action commenced by Ricupero's wife, Polly Ricupero, a.k.a. Polly Wilhelm. During a one-week period in mid-March of 1989, Mr. Ricupero intercepted and recorded all telephone calls at the Ricupero's marital home without Mrs. Ricupero's prior knowledge or consent by installing a wiretap device. Conversations between Mrs. Ricupero and her priest, her marriage counselor, her attorney and many of her friends were recorded. Mr. Ricupero was not a party to any of these communications.

These tapes were made in violation of Title III which criminalizes unauthorized,

unconsensual wiretapping. Section 2511(1)(a) is the basis for liability and provides that "any person who intentionally intercepts [or] endeavors to intercept ... any wire, oral, or electronic communication" shall be fined or imprisoned not more than five years.[1] Title III also makes any use or disclosure of the contents of a communication obtained in violation of section 2511(1)(a) illegal, 18 U.S.C. § 2511(1)(c)–(d).

Mr. Ricupero gave these tapes to the defendant for use in the divorce proceedings and represented that he had recorded the telephone conversations with his wife's knowledge. When the defendant became aware that the tapes of the conversations were in fact made without the knowledge or consent of Mrs. Ricupero is disputed. The defendant had his secretary transcribe the tapes and had a law clerk prepare written summaries of their contents.

On April 10, 1989, a hearing was held in an Ohio state court on Mrs. Ricupero's charges of domestic violence by Mr. Ricupero. During the defendant's cross-examination of Mrs. Ricupero he used the written summaries of the transcripts in an attempt to impeach her testimony. This was the first time Mrs. Ricupero obtained actual knowledge that her husband had tapped the telephones. Counts 1 and 2 of the indictment charged the defendant with intentionally using and disclosing the contents of a wire communication in violation of Title III at this hearing. The defendant was acquitted of both of these charges.

The defendant was convicted on counts 4, 6 and 8 of the indictment for using the contents of the non-consensual recordings in violation of section 2511(1)(d) on three subsequent occasions.[2] The first was the May 24, 1989 deposition of Mrs. Ricupero. The defendant brought several audio tapes and folders filled with the written transcripts to the deposition. The defendant relied on the contents of the tapes to ask Mrs. Ricupero pointed questions about statements she allegedly made or that oth-

ers made to her in telephone conversations recorded during March 1989. He also played the tapes themselves numerous times. Mrs. Ricupero's attorney, Carl Murway, objected to the use of the tapes and their contents, but allowed the deposition to continue.

The defendant next used the contents of the tapes at the May 26, 1989 deposition of John Wilhelm, the man with whom Mrs. Ricupero was involved at the time and to whom she is now married. Relying on the transcripts, the defendant asked Mr. Wilhelm about a specific conversation he and Mrs. Ricupero allegedly had in March 1989 which had been recorded. Once again Mrs. Ricupero's attorney objected to this use of the tapes.

The third occasion on which the defendant used the contents of the recordings was the July 8, 1989 state court divorce hearing. The defendant used tape derived information to cross-examine Mrs. Ricupero on whether she had hidden marital money from her husband prior to the divorce.

The defendant admits that he intentionally used the contents of the recordings on these three occasions. He argues that his conduct was not criminal under the Act. The defendant alleges several errors in the court below. The defendant contends that the trial court wrongly interpreted section 2511(1)(d) and as a result committed plain error in instructing the jury that it could find guilt without finding that the defendant knew or had reason to know that the recordings were made in violation of the Act. The defendant also finds error in the court's instruction to the jury on the "reason to know" standard. He argues that the court should not have couched it in terms of reasonable foreseeability. In the alternative, he argues that a statute imposing criminal liability based upon a defendant's knowledge or reason to know is constitutional only if construed to require actual knowledge, intent or bad faith. The

---

1. Mr. Ricupero was granted use immunity for his testimony in the defendant's trial and was not prosecuted under Title III.

2. Counts 3, 5, and 7 charged the defendant with violating section 2511(1)(c) for disclosing the contents of the tapes on the same three occasions. The defendant was acquitted of these charges.

defendant also assigns as error the court's failure to give other jury instructions. Finally, the defendant alleges that the court committed reversible error by failing to give instructions related to several exceptions to Title III which the court refused to recognize.

## II.

### A. Knowledge or Reason To Know of the Violation

The standard of review in evaluating a claim of error in a trial court's charge to the jury is whether the charge, when considered as a whole, "fails accurately to reflect the law." *United States v. Busacca,* 863 F.2d 433, 435 (6th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 156 (1989). A trial court's exercise of its discretion in charging the jury will only be reversed if the instructions "taken as a whole" are "misleading" or give an "inadequate understanding of the law." *United States v. Buckley,* 934 F.2d 84, 87 (6th Cir.1991). When there is no objection to an instruction at trial, a defendant can only obtain relief if he can demonstrate "plain error," Fed.R.Crim.P. 30, 52(b), and if a "miscarriage of justice would otherwise result." *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). Plain errors are "limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." *United States v. Driscoll,* 970 F.2d 1472, 1485 (6th Cir. 1992) (quoting *United States v. Causey,* 834 F.2d 1277, 1281 (6th Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988)). Where, in formulating instructions, the "district court engages in statutory construction as a matter of law, ... [the Sixth Circuit] review[s] [the] conclusions *de novo.*" *Buckley,* 934 F.2d at 87–88 (quoting *United States v. Brown,* 915 F.2d 219, 223 (6th Cir.1990)).

With these standards in mind, we find that the District Court committed plain error in its instructions to the jury on the

government's burden of proof under section 2511(1)(d). This section provides that:

any person who ... intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, *knowing or having reason to know that the information was obtained* through the interception of a wire, oral, or electronic communication *in violation of this subsection* [shall be fined or imprisoned].

18 U.S.C. § 2511(1)(d) (emphasis added). After reading this section to the jury, the court charged it to find the defendant guilty of violating section 2511(1)(d) if the government proved the following elements beyond a reasonable doubt:

First, that on or about the date charged in the indictment, in the Northern District of Ohio, defendant William T. Wuliger did intentionally use or endeavor to use the contents of a wire communication.

And, second, that defendant William T. Wuliger knew or had reason to know that the information which was used or endeavored to be used was obtained through the intentional interception of a wire communication.

And, third, that the information used or endeavored to be used was obtained in violation of Title 18, United States Code, Section 2511(1)(a).

Section 2511(1)(a) provides in pertinent part that: "Any person who intentionally intercepts or endeavors to intercept any wire communication shall be guilty of a criminal offense."

The charge required the jury to find only that the defendant knew or had reason to know that the information was derived from a wire interception. It did not require the jury to find that the defendant knew or had reason to know that the interception itself was in violation of Title III. As we interpret this section, however, knowledge or reason to know of the illegality is an element of this offense.

In *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), a food stamp case, the Supreme Court addressed the issue of whether the government must prove that a defendant knew he

was using food stamps in violation of a federal statute governing food stamp fraud. The statute, 7 U.S.C. § 2024(b)(1) (West 1988), provides that "whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or regulations" is subject to a fine and imprisonment. In *Liparota,* the government argued that a violation occurs when one acquires or possesses food stamps and that acquisition or possession is in fact unauthorized. The petitioner claimed that a violation occurs only if an individual knows that he has acquired or possessed food stamps *and* that he has done so in an unauthorized manner.

The Court found no guidance in the legislative history or the words themselves, as they lend themselves to either interpretation, on what type of mental element Congress intended for this crime. So it looked, as do we, to the significance of the *mens rea* requirement in our criminal law. "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Liparota,* 471 U.S. at 425, 105 S.Ct. at 2088 (quoting *Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952)). The Court further noted that "[c]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." *Id.* (quoting *United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978)). Thus, the Court held that the food stamp fraud provision required both knowing use and knowledge of illegality. *Id.* at 425, 98 S.Ct. at 2088.

The Supreme Court's reasoning in *Liparota* guides this Court's interpretation of the mental element required under 18 U.S.C. § 2511(1)(d). The syntax of section 2511(1)(d) parallels that of the food stamp provision; the "knowing" requirement is followed by the "use" requirement which is followed by the "illegality" requirement. The government wrongly asserts that "*Liparota* stands for the proposition that *if* knowledge of illegality is an essential element of the offense, then it must be charged by the court." Gov't Brief at 37. Indeed, the Supreme Court addressed the same problem of statutory interpretation presented to this Court, *i.e.,* whether knowledge of illegality is an element of the offense. The government presents no persuasive evidence that the legislative history of Title III distinguishes this case from *Liparota.*

Additionally, in *Fultz v. Gilliam,* 942 F.2d 396 (6th Cir.1991), a case construing sections 2511(1)(c) and (d) of the Act, this Court assumed that knowledge of illegality was an essential element of these offenses. While discussing the scope of these sections the Court stated that "[b]y prohibiting all intentional uses and disclosures of unauthorized interceptions *by an individual with knowledge of the violation,* subsections (1)(c) and (d) strengthen subsection (1)(a) by denying the wrongdoer the fruits of his conduct." *Id.* at 401 (emphasis added).

The government cites *Fultz* to support the well accepted rule that ignorance or mistake of the law is no defense, in this case, to a violation of the Wiretap Act. The government seems to be arguing that by recognizing a knowledge of illegality requirement, this Court would be creating a mistake of law defense. This position is mistaken. If the defendant claimed ignorance that the use of nonconsensual recordings was illegal, that claim would be one of mistake of law. However, whether or not the defendant knew or had reason to know the interception in this case was nonconsensual and thus, illegal, is a question of fact.

The defendant admitted that he used the contents of the tapes and that he knew the information was obtained from an intentional wire interception. Mr. Ricupero told the defendant as much when he gave the defendant the tapes. Mrs. Ricupero testified that she did not know her husband had tapped the home phone and that she did not consent to the recordings. Nonconsensual

recordings violate the Act, 18 U.S.C. § 2511(1)(a).[3] Under these facts and the court's instructions, the only verdict the jury could return was guilty.

Under these instructions, the government did not have the burden of proving that the defendant knew or had reason to know that the recordings were nonconsensual.[4] Mr. Ricupero testified that he told the defendant that the recordings were made with his wife's knowledge. Under the given instructions, the jury did not deliberate on whether or not the defendant knew or had reason to know that Mrs. Ricupero had not given her consent to the recording of her phone conversations, at the time he used the recordings.

The government argues that when viewed as a whole, the instructions adequately instruct the jury on the government's burden of proof. In its charge, the District Court discussed "proving the defendant's state of mind." The Court addressed how difficult it is to prove a person's state of mind directly, and that it may be proved indirectly with circumstantial evidence.

> You may find that the defendant acted knowingly if you find that he acted with a conscious purpose to avoid learning the truth. Stated another way, a defendant's knowledge of a fact may be inferred from his willful blindness to the existence of a fact. No one can avoid responsibility for a crime he may be committing by deliberately ignoring the obvious. A defendant cannot deliberately close his eyes to the obvious risk that he is engaging in unlawful conduct.

These instructions can be construed as referring to whether or not the defendant knew Mrs. Ricupero lacked knowledge that her phone was tapped. However, the instructions and the question of Mrs. Ricupero's knowledge were never so connected by the court. Nowhere in its instructions did the court instruct the jury that the govern-

ment had to prove the defendant knew or had reason to know of her lack of consent. The court also stated that:

> The government is not required to prove the defendant's motive in engaging in the prohibited conduct, or that the defendant acted with a bad purpose, with an intent to violate the law.

> The government is also not required to prove that the defendant knew that he was violating the law when he allegedly disclosed or used the contents of the telephone conversations.

And "prohibited conduct" was defined by the court as knowing use of the contents of a recording which was *in fact* made in violation of the Act.

We find that by failing to instruct the jury that it had to find the defendant knew or had reason to know that the recordings were made in violation of the Act, the defendant was deprived of his only defense. The court's instructions were tantamount to directing a verdict against the defendant and amounted to plain error.

### B. Reason to Know Standard

The court instructed the jury that a "person has reason to know of a particular fact or circumstance when there is a reasonable foreseeability of such a fact or circumstance." The defendant raises several issues regarding this instruction.

■ First, the defendant contends that a statute imposing criminal liability based upon a person's "knowledge or reason to know" may survive constitutional challenge only if construed to require actual knowledge, intent or bad faith. The defendant relies upon numerous cases to support this proposition. *Kansas Retail Trade Co-op v. Stephan,* 695 F.2d 1343, 1346 (10th Cir. 1982); *New England Accessories Trade Association, Inc. v. Tierney,* 691 F.2d 35, 36–37 (1st Cir.1982); *Tobacco Accessories*

---

**3.** Consensual recordings do not violate Title III. The Act provides that it is not unlawful "for a person ... to intercept a wire ... communication ... where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d) (West 1970).

**4.** The government did have the burden of proving that "prior to the interception of her calls, Polly Ricupero did not expressly or impliedly consent to the interception and recording of those telephone calls."

*and Novelty Craftsmen Merchants Association of Louisiana v. Treen,* 681 F.2d 378, 385 n. 16 (5th Cir.1982); *New England Accessories Trade Association, Inc. v. City of Nashua,* 679 F.2d 1, 4–5 (1st Cir. 1982); *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1219 (11th Cir.1982). These cases deal with statutes regulating the use and distribution of drug paraphernalia. The relevant section prohibited the delivery or manufacture of drug paraphernalia by one who knew or had reason to know that the item would be used to take drugs. The statutes were challenged on the "reason to know standard." The challengers alleged that a seller's criminal liability could be based on the unknown intent of a third party since a seller cannot know what the ultimate recipient intends to do with an item. The courts found that, based on a definitional section of the statutes, an item is only drug paraphernalia if the seller intends it to be sold for drug use. Only after finding this requisite intent on the part of the seller does the seller's constructive knowledge of its use by a buyer come into play. These cases *rejected* challenges to the "reason to know" standard and viewed as constitutionally proper "that the seller be required to open his eyes to the objective realities of the sale." *Stephan,* 695 F.2d at 1346.

There are numerous criminal statutes providing for criminal liability where the *mens rea* element is "reason to know." See *e.g.,* 18 U.S.C. § 1384 (prostitution near military establishments); 18 U.S.C. § 1546 (fraud and misuse of visas, permits, and other documents); 18 U.S.C. § 2251 (sexual exploitation of children). We find that the reason to know standard is constitutionally sufficient as a basis for criminal liability.

■ Second, by couching the "reason to know standard" in terms of reasonable foreseeability, the defendant alleges that the court construed and applied section 2511(1)(d) in a manner as to render it unconstitutionally vague and overbroad. The government argues that Congress intended that the knowledge element of section 2511(1)(d) could be satisfied upon proof of actual knowledge or the "reasonable foreseeability" of a fact or circumstance.

The legislative history of Title III states that "[t]he scope of the knowledge required to violate [section 2511(1)(d)] reflects existing law," citing *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). In *Pereira,* the defendant was convicted of violating the mail fraud statute, 18 U.S.C. § 1341. The elements of section 1341 are a scheme to defraud, the mailing of a letter for the purpose of executing the scheme and proof that the defendant caused the mailing. The only question was whether Pereira "caused" the mailing. The Court found that one causes a mailing where 1) one acts with knowledge that use of the mails will follow, or 2) where such use can *reasonably be foreseen,* even though not actually intended.

We do not interpret *Pereira* as establishing that "reasonable foreseeability" *satisfies* the "reason to know" standard of section 2511(1)(d), as the government asserts. In the present case, the court instructed the jury to use reasonable foreseeability as a basis for finding that the defendant had reason to know a fact. "A person has reason to know of a particular fact or circumstance when there is a reasonable foreseeability of such fact or circumstance."

We agree with defendant that reasonable foreseeability does not satisfy the "reason to know" requirement as the above jury instruction appears to indicate. Reasonable foreseeability is only a factor to be considered with other circumstantial evidence in determining whether one has reason to know a fact. Upon retrial, the court should focus on defendant's reason to know rather than on whether it was reasonably foreseeable that Mrs. Ricupero would or would not consent. We are not concerned here with future conduct where foreseeability of what others will do is relevant.

In a related issue, the defendant argues that due to an attorney's professional obligations, attorneys are entitled to a special instruction on the "reason to know" stan-

dard.[5] The defendant asserts that as an advocate his role is not to pre-judge the merits of his client's factual allegations. Mr. Ricupero represented to the defendant that the tapes were made with his wife's knowledge, in which case they would not violate Title III. The defendant argues that he should be able to rely on the factual representations of his client regardless of his personal opinion as to the client's credibility. He points to his professional duty to present any evidence or theory which is arguably viable, subject to standards of good faith and reasonableness.[6] Because he proceeded on the belief his client was telling the truth, the defendant contends he had no "reason to know" Mrs. Ricupero did not in fact consent to the recordings.

There is nothing in the Act which affords attorneys special treatment. Accordingly, we find that the defendant was not entitled to a special instruction on the reason to know standard solely because he used the tapes in his role as attorney. However, an attorney's professional duties may be a factor in determining whether there is reason to know that recorded information, given by the client, was illegally obtained. Although an attorney must not turn a blind eye to the obvious, he should be able to give his clients the benefit of the doubt. This countervailing duty is one the jury may take into account in deciding whether defendant had reason to know.

### III.

■ The defendant argues that the trial court erred in failing to recognize various exceptions to the application of Title III and thus failed to instruct the jury on the defenses provided by these alleged exceptions. A district court's refusal to deliver a requested instruction is reversible only if that instruction is 1) a correct statement of the law, 2) not substantially covered by the charge actually delivered to the jury, and 3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense. *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir.1991). We find that the District Court correctly refused to recognize the asserted exceptions to the Act, and uphold the Court's decision to refuse defendant's proposed instructions.

### A. Impeachment Exception to Section 2515

■ Section 2515 of the Wiretap Act serves as an exclusionary rule. It prohibits any information obtained from a wiretap from being introduced into evidence "in any trial, hearing, or other proceeding in or before any court ... or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.

The Fifth Circuit was the first to recognize an impeachment exception to this rule in *United States v. Caron*, 474 F.2d 506 (5th Cir.1973). Since then, three other circuits have addressed this issue and have followed the Fifth Circuit in recognizing this exception. *See, United States v. Echavarria–Olarte*, 904 F.2d 1391 (9th Cir. 1990); *United States v. Vest*, 813 F.2d 477 (1st Cir.1987); *Anthony v. United States*, 667 F.2d 870 (10th Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982).

In finding an impeachment exception to exist, the Fifth Circuit looked to section 2515's legislative history which specifically cites *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The passage explicitly states that section 2515

---

**5.** The defendant proposed the following instruction:

1. A lawyer, in the performance of his duties, has a right to rely upon information furnished by his client and to act upon such information.

2. A lawyer, in the performance of his duties, cannot be expected to accept factual allegations made by the opposing party in pending litigation as truth if he has reason to believe they may not be true. Likewise, a lawyer cannot be expected to accept legal arguments made in pending litigation as true if he does not in good faith believe that they are supported by the facts or any permissible construction of the law favorable to his client.

**6.** See *e.g.*, Ohio Code of Professional Responsibility, EC 7–2, 7–3, 7–4, 7–19.

"reflects existing law" and there is "no intention to ... press the scope of the suppression role beyond present search and seizure law. See *Walder v. United States,* 347 U.S. 62 [74 S.Ct. 354, 98 L.Ed. 503] (1954)." S.Rep. No. 1097, 90th Cong., 2d Sess. 1 (1968), reprinted in 2 U.S.Code Cong. & Admin.News 2112, 2185 (1968). *Walder* was the first case to establish an impeachment exception to the Fourth Amendment exclusionary rule. It involved a perjury prosecution in which the government used illegally seized evidence to impeach the defendant. Likewise, in *Caron,* the defendant was indicted for giving false testimony to the grand jury. The prosecution introduced into evidence recordings of conversations to which the defendant was a party without a prior evidentiary hearing on their validity.

The use of this exception to section 2515 has been limited thus far to government prosecutors. The defendant requests both that this Court follow the Fifth Circuit in recognizing the impeachment exception, and that we extend its availability to private individuals.

Whether or not an impeachment exception exists at all is an open question in this Circuit. The plain language of section 2515 allows for no exceptions to its reach. "[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). In *United States v. Vest,* the First Circuit stated that:

> [W]e believe that if Congress had intended to commit the courts general authority to create exceptions to section 2515 in the same manner as the courts might develop future exceptions to the fourth amendment exclusionary rule, Congress could certainly have said so more clearly.

813 F.2d at 482. However, assuming that an exception exists in the criminal law based on Congress' express approval in the legislative history to the continued use of illegally obtained wiretap evidence for impeachment purposes by the government in criminal cases, we see no basis to create such an exception in civil actions between private parties.

Recently, this Court laid out the purposes of the Wiretap Act.

> Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) *delineating on a uniform basis the circumstances and conditions* under which the interception of wire and oral communications may be authorized.
>
> [A]lthough Title III authorizes invasions of individual privacy under *certain circumstances,* the protection of privacy was an overriding congressional concern.

*Fultz v. Gilliam,* 942 F.2d 396, 401 (6th Cir.1991) (citations omitted; emphasis added).

In light of this overriding concern for protection of privacy, and because the Act sets out when certain uses or disclosures of wiretap material are authorized, it may be implied that "what is not permitted is forbidden." *Id.* at 402. Therefore, since section 2515 allows for no exceptions, we refuse to recognize an impeachment exception to section 2515 in *civil* proceedings. The greater value to society to learn the truth in criminal cases where it may be discovered by impeaching materials, even if unlawfully obtained, may outweigh the individual rights to privacy. While in the civil context, it is principally the individual rights that are at issue and Congress has balanced the scale in favor of the right of privacy.

An additional consideration for treating civil and criminal cases differently is that evidence of impeachment in criminal cases, with very limited exceptions, occurs at the trial under the supervision of the court. This is not true in civil cases where there is extensive impeachment at depositions. Most use of wiretaps—when not used for tortious or criminal purposes which are covered by other sections of the Act—will be in litigation and for impeachment. A blanket impeachment exception would swallow up the statutory prohibition.

### B. Interspousal Exception

■ Next, the defendant contends that the trial court's failure to instruct on the conflicting interpretations of Title III, concerning the existence of an interspousal wiretapping exception to section 2511(1)(a), was error. "[T]he unlawfulness of interspousal wiretapping has been a settled point of law in this Circuit since our decision in [*United States v. Jones,* 542 F.2d 661 (6th Cir.1976)]." *Fultz,* 942 F.2d at 404. Concededly, in *Simpson v. Simpson,* 490 F.2d 803 (5th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974), the Fifth Circuit held that section 2511(1)(a) was not intended to prohibit purely interspousal wiretaps placed on telephones in the marital home. The *Jones* Court rejected this view. Unlike the Fifth Circuit, this Court was unwilling to look beyond the language of section 2511(1)(a) which clearly expresses a blanket prohibition on all electronic surveillance (except under circumstances specifically enumerated in the statute).[7] We are bound to follow *Jones.* There is no interspousal exception to the Act.

The defendant proposed the following instruction:

> Even though you have been instructed that tapping a telephone in the marital residence while the spouses live together is not legal, you may consider the evidence that the federal courts are in disagreement on this issue when determining whether Wuliger knew or had reason to know that the taps involved in this case were illegal.

The defendant alleges that in his research he discovered the *Simpson* case, and cases indicating that Ohio domestic relations courts were allowing the use at trial of interspousal wiretap recordings or of information derived therefrom. *E.g., Beaber v. Beaber,* 41 Ohio Misc. 95, 322 N.E.2d 910 (Ohio Com.Pl., 1974). He submits that because of this precedent, he believed that the tapes Mr. Ricupero made were legal and therefore the existence of these cases bore on his knowledge or rea-

son to know whether the tapes were made in violation of the Wiretap Act.

Due to this mistake, the defendant contends that he did not possess the requisite knowledge to violate section 2511(1)(d). In *Fultz,* 942 F.2d at 396, we addressed a very similar issue under section 2511(1)(c) which prohibits disclosure of the contents of an intercepted communication, by an individual knowing or having reason to know that the information was obtained through an interception in violation of Title III. The defendant in *Fultz* asserted that "not even the Circuit Courts are in agreement whether interspousal wiretapping is a violation of the Federal Wiretapping Act or is excluded." *Id.* at 404. The Court rejected the defendant's argument that he lacked the requisite mental state because the argument was premised on a mistake of law, which has long been recognized as no defense to a criminal prosecution. *See Cheek v. United States,* 498 U.S. 192, ——, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991).

We interpret the defendant's proposed instruction as a request for a mistake of law defense and, therefore, find that the District Court did not err in refusing to give it.

### C. Good Faith Defense

■ Next, the defendant claims that there is a statutory "good faith" defense which authorized his conduct. To support his theory, he cites section 2520(d), which provides in pertinent part that:

> a good faith reliance on ... a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization ... is a complete defense against any ... criminal action brought under this chapter....

18 U.S.C. § 2520(d). The defendant then asserts that because the Ohio Code of Professional Responsibility is both a court order and a legislative authorization, he is entitled to an acquittal since he "relied on" the Code in deciding whether or not to use the tapes. Nothing in the Code "authorizes" the defendant to violate Title III in carrying out his professional duties. The

---

7. *See,* 18 U.S.C. §§ 2510(5)(a), 2511(2)(a)(i), 2511(2)(a)(ii), 2511(2)(b)–(e).

**1508**

defendant's reliance on section 2520 is mistaken; it is not applicable to this case. This defense was intended in part to protect telephone companies or others who cooperate under court order with law enforcement officials. *Jacobson v. Rose*, 592 F.2d 515, 522–23 (9th Cir.1978), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979).

### D. Consent to Use Defense to Section 2511(1)(d)

■ The defendant further assigns as error the trial court's failure to recognize a "consent to use" defense. No crime is committed under the Act by one who intercepts and records a telephone conversation with the prior consent of one of the parties. 18 U.S.C. § 2511(2)(d). The defendant submits that even though the statute does not explicitly so provide, it is similarly no crime for one to use or disclose information from an illegal intercept where one of the parties consents to such use or disclosure.

The defendant cites *United States v. Bragan*, 499 F.2d 1376 (4th Cir.1974), in support of this view. The *Bragan* court found that "[b]ecause Bragan's victims consented to the introduction into evidence of their wiretapped conversation, the exclusionary rule of 18 U.S.C. § 2515 did not render inadmissible the wiretaps Bragan made in violation of 18 U.S.C. § 2511." *Id.* at 1380 (footnote omitted). But a careful reading of this case indicates that the court admitted the contents of the recordings into evidence not because the victims consented to their *admission*, but rather, because they consented to the *recording* itself. *Id.* The statute does not expressly provide a "consent to use" exception to section 2511(1)(d).

Additionally, the defendant contends that because Mrs. Ricupero consented to the use of the recordings and failed to make a motion to suppress, she waived the right to contest the admissibility of the wiretap un-

der section 2518(10)(a). This section provides that:

> Any aggrieved person in any ... proceeding in or before any court, ... may move to suppress the contents of any ... communication intercepted pursuant to this chapter ... on the grounds ... that the communication was unlawfully intercepted....
>
> Such motion shall be made before the ... proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion.

18 U.S.C. § 2518(10)(a). This section is not applicable to this case. It could apply if Mrs. Ricupero was contesting the admissibility of the recordings in a civil suit, but we are not concerned with the rights of Mrs. Ricupero. This case involves the criminal prosecution of Mr. Wuliger and thus the notion of waiver is irrelevant.

### E. Instruction on Mr. Ricupero's Credibility

■ Next, the defendant claims as error the trial court's failure to give the defendant's proposed jury instruction number 12. This instruction provided an explanation that a grant of immunity did not grant witnesses any license to give false testimony or to commit perjury or obstruction of justice.[8] The trial court instructed the jury that because Mr. Ricupero was given use immunity in exchange for his *truthful* testimony, it should consider his testimony with more caution and whether this promise could have influenced his testimony.

The defendant argues that the court should not have given this "grain of salt" instruction because the immunized testimony exculpated the defendant. Mr. Ricupero testified that when he presented the tapes to the defendant he represented that his wife knew he had recorded them. The defendant asserts that this exculpatory tes-

---

**8.** The defendant proposed the following instruction:

> You have heard testimony that some witnesses ... were given immunity. These witnesses were told that their testimony would not be used against them if they are prosecut-

ed for intentionally intercepting the conversations of Polly Ricupero and others, provided they give truthful testimony. They were not given immunity to give false statements or to commit perjury or the obstruction of justice.

timony was contrary to the wishes of the entity granting the immunity, and his testimony should have been given even more credence by the jury.

The government counters that the testimony inculpated the defendant. Mr. Ricupero admitted that when he installed the wiretap device he did not have his wife's permission to do so. But this testimony doesn't establish that the *defendant* knew of this fact. In terms of what the defendant knew, Mr. Ricupero's testimony shows only that he told the defendant that the tapes were made with his wife's knowledge. Because the testimony was exculpatory, the instruction was . inappropriate. However, because the Court instructed the jury that Mr. Ricupero was given immunity in exchange for his *truthful* testimony, we find that the failure to give the defendant's requested instruction did not substantially impair the defendant's defense.

## IV. Denial of Motion For Judgment of Acquittal

■ The defendant asserts that the trial court's denial of his motion for judgment of acquittal after the verdict, Fed. R.Crim.P. 29(c), is grounds for reversal. This Court must review the denial of a motion for acquittal *de novo* under the standard of "whether, after reviewing all the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Busacca*, 936 F.2d 232, 239 (6th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ The defendant contends that he is entitled to an acquittal because there was evidence that Mrs. Ricupero knew her telephones were being recorded. Section 2511(2)(d) provides that it is no crime under the Act for one to record a conversation if one of the parties thereto consents. And thus, the defendant claims that his conduct could not be criminal if the recordings were lawful. The trial court instructed the jury that since Wuliger raised the issue of "consent," the government "must prove beyond a reasonable doubt that Polly Ricupero did not give her prior consent to the interception of her telephone calls." There is ample evidence in the record indicating that in mid-March 1989 Mrs. Ricupero was unaware that her telephone calls were being recorded. The record indicates that although she may have suspected her husband was tapping the home phones, her suspicion did not arise until after most of the conversations were recorded. More importantly, she testified she did not actually know of the wiretap until the April 10th hearing at which the defendant first used the recordings.

## V.

Under section 2511(1)(d), the government must prove beyond a reasonable doubt that the defendant knew or had reason to know that the recordings he used were obtained in violation of the Act. The District Court's failure to instruct the jury properly on the requisite mental element of section 2511(1)(d) amounted to plain error. Accordingly, we REVERSE the defendant's conviction and REMAND the case for a new trial consistent with this opinion.

WELLFORD, Senior Circuit Judge, concurring.

I am in full agreement with all but part II.A. of Judge Kennedy's decision in this interesting case. I join in the result reached, but write separately because I wish to emphasize that the issue of plain error in the district court's instruction to the jury on "knowledge or reason to know of the violation" under 18 U.S.C. § 2511(1)(d) is a very close question. (Part II.A. of the majority opinion.)

The district judge instructed the jury on this issue, using first the language of the statute which makes it plain that the offender must be shown to have made intentional use of the described communication (in this case, telephone communication) "knowing or having reason to know" that the intercepted information was "in violation of" the law. The jury was thus given necessary information that the wire inter-

ception use statute required: (1) an intentional use or attempted use; (2) knowledge or reason to know that the information in question was obtained through intentional interception; and (3) that the interception itself was in violation of the act.

Only the latter requirement was not adequately explained by the district court in one part of its instruction, but in quoting the language of the statute, that necessary element was included. The indictment counts on which defendant was found guilty also tracked this statutory language in that Wuliger did

> *intentionally use* and endeavor to use, *the contents of a wire communication,* a telephone conversation of Polly Ricupero, *knowing and having reason to know that the information was obtained through the interception of a wire communication in violation of Title 18, United States Code, Section 2511(1)(a);* that is, the information was *obtained through the intentional interception* of a wire communication.

(emphasis added). The indictment counts, with all the necessary statutory requirements, were also read to the jury. The district court adequately advised the jury that the government had to prove all the necessary elements charged in the indictment beyond a reasonable doubt.

The elements as set out by the district court omitted the requirement that dealt with knowledge or reason to know about the interception's being in violation of law; that is, without the consent or approval of the telephone user, Polly Ricupero. (Wilhelm) (18 U.S.C. § 2511(1)(d)). "Even if an instruction proves impermissible viewed in isolation, the reviewing court upholds the instruction if it takes on a permissible meaning in the context of surrounding instructions." *United States v. Buckley,* 934 F.2d 84, 87 (6th Cir.1991) (citing *California v. Brown,* 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987) (holding that it is what a reasonable juror could have understood that is important)).

What makes this case even more difficult is the very nature of the intercepted information itself, including conversations between Mrs. Ricupero and her lawyer, and between her and her lover. It would seem evident to a reasonable person that there was no consensual interception of such conversations.[1] David Ricupero, Wuliger's client, admitted that he "thought" he told Wuliger's law office associate or assistant, Doug Leak, that his wife "was not aware that she was being recorded" after delivering the tapes to Wuliger's office.

At trial, moreover, Wuliger's counsel took the position at a bench conference that "the tape was made illegally." Leak said that he relayed to Wuliger "David's concerns about using the tapes," and his own "question of whether it was legal to use the tapes." In sum, his "impression was that Polly didn't know that she was being recorded" based on the tapes and the transcripts thereof which were furnished to Wuliger.[2]

Only by giving defendant the benefit of considerable doubt can I concur with the decision that the instructions, taken as a whole, were fatally defective and deprived defendant of a fair trial.

---

**1.** Wuliger's law office assistants had this impression.

**2.** Wuliger later disposed of the transcripts.