# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court building in the City of Richmond on Thursday the 1st day of August 2019.*

Present:  All the Justices

Robert Leigh Stoltz,                                                                                          Appellant,

 against                            Record No. 181033
                                   Court of Appeals No. 0352-17-4

Commonwealth of Virginia,                                                                              Appellee.

Upon appeal from a judgment
rendered by the Court of Appeals of
Virginia.

Robert Leigh Stoltz challenges his conviction for violating Code § 18.2-374.3(C) by using a computer for the purpose of soliciting a minor.  Stoltz claims that the statute is both vague and overbroad, thus violating his freedom of speech and his due process rights under the First and Fourteenth Amendments of the United States Constitution.  The trial court and the Court of Appeals disagreed with Stoltz, as do we.

I.

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."  *Commonwealth v. Perkins*, 295 Va. 323, 323 (2018) (per curiam) (citation omitted).  "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  *Id.* at 323-24 (citation omitted).

So viewed, the record shows that in 2014, the Fairfax County Police Department operated a Child Exploitation Unit ("CEU") dedicated to, among other things, investigating "solicitations of minors by adults using the [I]nternet as the main source of that solicitation."  1 J.A. at 272-73.  Working in an "undercover capacity," CEU detectives would pose as minors and appear on websites "looking for potential child predators."  *Id.* at 273-74.  In November 2014, a CEU detective posed as a 13-year-old girl named Annie and accessed the Casual Encounters webpage

of Craigslist. At that time, the Casual Encounters webpage allowed individuals to post advertisements seeking casual, anonymous sex. A notification on that webpage stated that only adults could use it, but, as the detective testified, "there's no verification of any kind" because the user does not "have to provide a name, an email address, [or] an identification. So it's open to everybody." *Id.* at 275-76. Based upon his prior "training and experience with child exploitation investigations," the detective knew that minors accessed the Casual Encounters webpage of Craigslist. *Id.* at 276-77.[1]

The detective scanned through the advertisements on the Casual Encounters webpage and discovered an advertisement, later confirmed to have been posted by Stoltz, entitled: "**Can I CUM on you? Quick shot and heavy load! - m4w - 34 (northern va**)." Commonwealth's Ex. 1 (emphasis in original).[2] Accompanied by a picture of an erect penis, the pertinent part of Stoltz's advertisement stated:

> Sorry for the repost - but too many flakes...
>
> Still so horny - blue balls type weekend. I really really need to shoot my load and would love to shoot it on someone who is turned on by cum shots, cum fetishes, or just loves to get cummed on. Also anyone that is curious about it too... I can be quick - or not - your call.
>
> I will cum wherever you want me to --> ass/chest/face/mouth/pussy/stomach/feet, etc. You will need to host at your place -- or your office -- car.

---

[1] This webpage on the Craigslist website has been the source of numerous child-solicitation cases. *See, e.g.*, *United States v. Rocha*, No. 2:13-cr-00269-LDG (GWF), 2014 WL 6983311, at *3-4 (D. Nev. Dec. 10, 2014) (unpublished); *Lee v. State*, 258 So. 3d 1297, 1299-1300 (Fla. 2018); *State v. Shelley*, 176 So. 3d 914, 916-17 (Fla. 2015); *State v. Keller*, No. COA17-1318, ___ S.E.2d ___, ___, 2019 WL 2180368, at *1-2 (N.C. Ct. App. May 21, 2019); *State v. Racus*, 433 P.3d 830, 832-33 (Wash. Ct. App.), *review denied*, 441 P.3d 828 (Wash. 2019) (unpublished table decision); *State v. Solomon*, 419 P.3d 436, 438-40 (Wash. Ct. App. 2018). Responding to this fact, Congress recently passed the "Allow States and Victims to Fight Online Sex Trafficking Act of 2017." *See* Pub. L. No. 115-164, 132 Stat. 1253 (2018) (codified as amended at 18 U.S.C. §§ 1591(e), 1595, 2421A and 47 U.S.C. § 230(e)). In 2018, Craigslist removed the entire "personals" section, which included the Casual Encounters webpage, from its website. *See Green v. Commonwealth*, No. 2017-CA-000663-MR, 2018 WL 4847083, at *1 n.2 (Ky. Ct. App. Oct. 5, 2018) (unpublished).

[2] Quotations from Stoltz's advertisement and from the messages between Stoltz and Annie are repeated verbatim herein without alterations.

2

> Safe, VERY clean, normal, and cute white-guy here.  Athletic
> physique with a good sized and very cum filled cock.  Discrete.

*Id.* (alterations in original).

Stoltz's advertisement caught the detective's eye because some advertisements on that webpage (he did not specify what percentage) would expressly say:  "I'm looking for an adult, or I'm looking for an age range . . . twenty to twenty-five, or eighteen and over."  1 J.A. at 329.  The "vagueness" of Stoltz's advertisement drew the detective's attention based on his "experience working these types of investigations" and the fact that "[t]here was nothing specifically asking for an adult."  *Id.*  Having "responded and looked at thousands" of advertisements on Craigslist and similar websites, the detective had "never seen" an advertisement that explicitly said an adult was looking for sex with a minor.  *Id.* at 329-30.  Pedophiles are never that direct, the detective explained, because "Craigslist would remove the ad immediately" if it expressly sought out a minor.  *Id.* at 330.

The detective responded to Stoltz's advertisement posing as 13-year-old Annie, stating that she was not in school that day.  When Annie offered to send a photograph of herself, Stoltz responded that he would love to see one.  The detective sent Stoltz a picture of the face of an adult Fairfax County animal control officer.  Pictures of the animal control officer, a 25-year-old with a youthful face, had been used in prior undercover investigations.  The email conversation through Craigslist continued with Annie asking what Stoltz wanted to do.  Annie also asked Stoltz whether it was okay that she could not drive.  Stoltz responded that he would "like to do what I said in my post, but am open.  What do you have in mind?"  Commonwealth's Ex. 2.  Regarding Annie not being able to drive, he stated, "I can drive to you so no worries."  *Id.*

The conversation moved from the Craigslist emails to Yahoo Messenger when Stoltz provided Annie with his Yahoo email address.  During that portion of the conversation, Annie further explained that her parents were out of town and that she was home alone and out of school.  When Stoltz asked her why she had looked on Craigslist, Annie responded that she was "curious and stuff," to which Stoltz responded, "I hear taht."  Commonwealth's Ex. 3.  When Annie asked Stoltz again what he was planning, Stoltz responded, "I'm really open - but if you're curious maybe I can help?"  *Id.*  Stoltz asked Annie, "do you like kissing?" and "have you kissed a boy before?," to which Annie responded in the affirmative.  *Id.*  Annie then asked Stoltz "wut else" he had in mind, and Stoltz asked Annie if she "like[d] being touched," to which Annie responded, "i haven't been touched b4 sorry."  *Id.*  Annie asked again what the two were "going

3

to do," and Stoltz responded, "well - i like kissing and touching - would you be interested in touching me?" *Id.* When Annie asked Stoltz for further clarification, Stoltz responded, "i'd like to kiss you and get naked with you. then touch your body all over and you can touch me all over too." *Id.*

Annie then asked for a phone call with Stoltz to ensure that he was real. Stoltz was initially reluctant to give out his phone number but eventually gave Annie an anonymous phone number through Google Voice that could not be traced back to his phone. The detective had a female colleague, mimicking the voice of a young female, talk to Stoltz on the phone while posing as Annie. The two agreed to meet at a Walmart near where Annie supposedly lived.

Stoltz arrived at Walmart at the appointed time, and the detective and his team observed Stoltz walking near the area where Stoltz had arranged to meet Annie. Stoltz also appeared to be on his phone, and the detective, still posing as Annie, was continuing to receive text messages from Stoltz during this time. When Stoltz eventually left the Walmart parking lot, the detective and his team initiated a traffic stop. When the detective told Stoltz why he was there, Stoltz said that he knew nothing about any contact with Annie and that he was not there to meet anybody. Stoltz gave the detective permission to look through his phone, but the detective found nothing relevant and concluded that the phone's browsing history had been deleted. The detective did not arrest Stoltz at that time. Shortly thereafter, the detective sent an administrative subpoena to Craigslist, which confirmed that the IP address associated with the original advertisement was tied to Stoltz's home. The detective then obtained a search warrant for Stoltz's home and eventually arrested Stoltz.

Stoltz was charged with one count of computer solicitation of a minor and one count of attempted indecent liberties with a child. His first trial ended in a hung jury. At Stoltz's second trial the court gave, at Stoltz's request and over the Commonwealth's objection, an instruction explaining the reason-to-believe concept found in the computer-solicitation statute. The instruction defined "[r]eason" as "a faculty of the mind by which it distinguishes truth from falsehood, good from evil, and which enables the possessor to deduce inferences from facts or from propositions." R. at 234. During its deliberations, the jury asked for clarification as to whether the phrase "reason to believe" in the statute meant that Stoltz had to "find the reason <u>credible</u>." *Id.* at 218 (emphasis in original). The trial court referred the jury to the instructions.

4

*See id.*  The jury thereafter convicted Stoltz of computer solicitation of a minor but found him not guilty of attempted indecent liberties with a child.

Stoltz moved for a new trial.  He claimed that the jury's question, along with post-verdict conversations with a juror, had revealed that the statute's use of the phrase "reason to believe," Code § 18.2-374.3(C), was unconstitutionally vague in violation of his Fourteenth Amendment rights and overbroad in violation of his First Amendment rights.  The trial court denied the motion, and Stoltz appealed to the Court of Appeals raising the same constitutional arguments.  In an unpublished opinion, the Court of Appeals found that Stoltz had waived any facial challenge to the statute at oral argument and that his remaining as-applied challenges were meritless.  *See Stoltz v. Commonwealth*, Record No. 0352-17-4, 2018 WL 3027015, at *1 n.1, *3-5 (Va. Ct. App. June 19, 2018).  Stoltz now appeals to us.

II.

Stoltz argues that the Court of Appeals erred in not finding Code § 18.2-374.3(C) unconstitutional, both facially and as applied, under the First and Fourteenth Amendments of the United States Constitution.  The challenged statute states, in relevant part:

> It is unlawful for any person 18 years of age or older to use a communications system . . . for the purposes of soliciting, with lascivious intent, any person he knows or has *reason to believe* is a child younger than 15 years of age to knowingly and intentionally [engage in various sexual acts].

Code § 18.2-374.3(C) (emphasis added).  Stoltz argues that the phrase "reason to believe," *id.*, renders this statute unconstitutionally vague and overbroad.  We disagree.

A.

The Court of Appeals found that Stoltz had "abandoned" any argument regarding facial unconstitutionality in his oral argument before that court and had thus limited himself to an as-applied challenge to the statute.  *See Stoltz*, 2018 WL 3027015, at *1 n.1.  Although Stoltz claims that he did not abandon his facial challenge, he does not assign error to the abandonment finding of the Court of Appeals.  *See* Rule 5:17(c)(1)(i).  As we have recently emphasized, "[a]n assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal.  Assignments of error are the *core* of the appeal."  *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017) (emphasis in original).  "With the assignment of error, an appellant should 'lay his finger' on the alleged misjudgment of the court below."  *Id.* at 122-23 (quoting Martin P. Burks, Common Law and Statutory Pleading

and Practice § 425, at 827 (T. Munford Boyd ed., 4th ed. 1952)).  In this way, "[a] properly aimed assignment of error must 'point out' the targeted error and not simply take 'a shot into the flock' of issues that cluster around the litigation."  *Id.* at 123 (citation omitted).

To mount a successful facial challenge, "the challenger must establish that no set of circumstances exists under which the [statute in question] would be valid," as opposed to an as-applied challenge, in which the challenger alleges "that the [statute in question] is unconstitutional because of the way it was applied to the particular facts of [his] case."  *United States v. Salerno*, 481 U.S. 739, 745 & n.3 (1987).  Given Stoltz's comingling of facial and as-applied concepts, however, we will assume without deciding that both theories are subsumed in his assignment of error.  Doing so, however, does not change the result.  Neither his void-for-vagueness challenge nor his overbreadth challenge has any legal merit.

B.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Beckles v. United States*, 137 S. Ct. 886, 892 (2017); *see also Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).  "Void for vagueness simply means that criminal responsibility should not attach *where one could not reasonably understand* that his contemplated conduct is proscribed."  *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 32-33 (1963) (emphasis added).  When considering a vagueness challenge, a court will assess whether the statute at issue

> is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."  Such a provision simply has no core.  This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause.

*Smith v. Goguen*, 415 U.S. 566, 578 (1974) (citation omitted).  The general requirement that a criminal statute contain a mens rea element "is not to say that a defendant must know that his conduct is illegal before he may be found guilty" because all he really must know are "'the facts that make his conduct fit the definition of the offense,' even if he does not know that those facts give rise to a crime."  *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted).  Nor does a statutory standard lose its constitutional moorings by drawing some rather fine lines.  After all, "the law is full of instances where a man's fate depends on his estimating rightly . . .

6

some matter of degree." *Johnson*, 135 S. Ct. at 2561 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Code § 18.2-374.3(C) does not run afoul of these settled vagueness principles. The phrase "knows or has reason to believe," Code § 18.2-374.3(C), is not ambiguous. A multitude of federal courts have found similar language impervious to vagueness challenges.[3] Moreover, many similar provisions appear in the Virginia Code,[4] and we have never questioned their constitutionality. We similarly find no fault with Code § 18.2-374.3(C). The statute advances its goal of combating the sexual exploitation of children by unmistakably saying that no adult may use a communications system for the purpose of soliciting an individual that "he knows or has reason to believe is a child younger than 15 years of age," *id.* We believe that an ordinary person would understand what conduct this statute prohibits. This conclusion effectively ends the matter. Only if people of "common intelligence must necessarily guess at [the statute's] meaning and differ as to its application" will a statute be deemed void for vagueness. *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).

Stoltz had reason to believe that Annie was younger than 15. After openly soliciting a sexual encounter without expressing or even implying any disinterest in juveniles, Stoltz

---

[3] *See, e.g.*, *Gorin v. United States*, 312 U.S. 19, 27-28 (1940) ("intent or reason to believe"); *United States v. Mena*, 342 Fed. Appx. 656, 658 (2d Cir. 2009) ("reason to believe"); *United States v. Bewig*, 354 F.3d 731, 737-38 (8th Cir. 2003) ("knowing, or having reason to know"); *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 822-23 (9th Cir. 2003) ("reason to believe"); *United States v. Saffo*, 227 F.3d 1260, 1268-70 (10th Cir. 2000) ("knowing or having reasonable cause to believe" and other "essentially identical" mens rea requirements in federal statutes); *United States v. Biro*, 143 F.3d 1421, 1429-30 (11th Cir. 1998) ("having reason to know"); *United States v. Wuliger*, 981 F.2d 1497, 1503-04 (6th Cir. 1992) ("reason to know"); *United States v. Featherston*, 461 F.2d 1119, 1120-23 & n.1 (5th Cir. 1972) ("knowing or having reason to know").

[4] Many Virginia criminal statutes use the phrase "reason to believe." *See* Code §§ 3.2-3214, -6588, 4.1-304(A), -306(A), 18.2-64.1, -109, -180, -308.2:2(M), -331, -348, -349, -371.2, -371.3, 44-110, 46.2-616, 54.1-2967, -4103, 57-57(B). Others use the similar phrase "reason to know." *See* Code §§ 2.2-3103.1, 4.1-306(A1), -332(A), 18.2-46.2(A), -51.1, -55(B), -57(C)-(E), -57.01, -57.02, -186.4, -190.3, -192, -370.2, -370.3(A), -370.4(A), -370.5(A), -371.4, -386.2(A), -391(A), -433.2(1), 19.2-62(A)(3)-(4), -63, 23.1-225(C)(1), 58.1-3(F), -1033(1), -1036(B), -2273, -2299.10(6), 59.1-293.11(C), -332(B). A multitude of criminal statutes in the United States Code also use these phrases. *See, e.g.*, 10 U.S.C. § 894 art. 94(a)(3); 15 *id.* §§ 158, 2614; 16 *id.* §§ 63, 98, 117c, 127, 170, 204c, 374, 395c, 404c-3, 408k, 4306(a)(2); 18 *id.* §§ 48, 231, 491, 793, 1039, 1384, 1521, 1992(a)(4), 2251, 2511(1), 2512; 42 *id.* §§ 1320c-6(a)(2), 2277; 47 *id.* § 605(e)(4); 49 *id.* § 60123(d)(2)(B); 50 *id.* § 783(a).

received a response from Annie, who informed him that she was "only 13" and was "off of school" that day. Commonwealth's Ex. 2. She immediately followed with, "if i'm 2 young tahts ok and i wont' bother u." *Id.* When Stoltz responded, "23 isn't too young," Annie reaffirmed: "13 not 23 hehe." *Id.* Annie further informed Stoltz that she was "home alone" because her parents were out of town. *Id.* She stated that it was the "first time they've let me stay alone" and that there had been "no school today" "or yestreday." Commonwealth's Ex. 3. When Annie sent Stoltz the picture of the animal control officer, Stoltz replied, "you're very cute! :)," Commonwealth's Ex. 2, not "you're cute but you look too old to be 13." The jury saw this picture, along with all of the communications between Stoltz and Annie, and heard the animal control officer testify in person. These facts, in aggregate, do not prove that Stoltz actually knew that Annie was underage. But they amply demonstrate that he had *reason to believe* that she was.[5] At the moment that Stoltz obtained such reason to believe, his use of the Internet for the purpose of solicitation became a crime.[6]

C.

We also find no merit in Stoltz's First Amendment challenge to the statute. Overbreadth under the First Amendment is a doctrine of "last resort," and its "limited" function

> attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct — even if expressive — falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect — at best a prediction — cannot, with confidence, justify invalidating a statute

---

[5] Though it was unnecessary for the trial court to give a specific instruction on the reason-to-believe concept, the court did just that at Stoltz's insistence and over the Commonwealth's objection. The jury was instructed that, under Virginia law, "[r]eason is a faculty of the mind by which it distinguishes truth from falsehood, good from evil, and which enables the possessor to deduce inferences from facts or from propositions." R. at 234. Given our holding, we need not address the trial court's decision to give this instruction.

[6] We survey the factual circumstances of Stoltz's case not to imply that Code § 18.2-374.3(C) is free from fatal constitutional vagueness "merely because there is some conduct [Stoltz's in particular] that clearly falls within the provision's grasp," *Johnson*, 135 S. Ct. at 2561. Instead, we believe that the linguistic range of the reason-to-believe standard in the statute is understandable to ordinary people, including Stoltz, and that his specific reasons to believe that Annie was underage were plainly evident from the record.

8

> on its face and so prohibiting a State from enforcing the statute
> against conduct that is admittedly within its power to proscribe.

*Broadrick v. Oklahoma*, 413 U.S. 601, 613-15 (1973). "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). Thus, "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

Code § 18.2-374.3(C) does not target speech, but conduct — specifically the use of a communications system (in this case, the Internet) for the purpose of soliciting a minor. The act of using a communications system is the actus reus of the crime, while the purpose of soliciting the child is the mens rea. *See Commonwealth v. Murgia*, ___ Va. ___, ___, 827 S.E.2d 377, 383 (2019) (addressing subsection D of the same statute); *Dietz v. Commonwealth*, 294 Va. 123, 134-35 (2017) (addressing subsection B of the same statute). The fact that Stoltz engaged in this conduct through the means of speech is only relevant if the statute sweeps in substantial amounts of protected speech in comparison to its legitimate proscription. Nothing in the statute criminalizes a substantial amount of protected speech when "judged in relation to the statute's plainly legitimate sweep," *Broadrick*, 413 U.S. at 615. Nor do any of Stoltz's arguments "justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe," *id.* Thus, Stoltz's facial overbreadth challenge must also fail.

## III.

Finding no merit in Stoltz's vagueness or overbreadth challenges to Code § 18.2-374.3(C), we affirm the judgment of the Court of Appeals. This order shall be published in the Virginia Reports and certified to the Court of Appeals of Virginia and the Circuit Court of Fairfax County.

A Copy,

Teste:

Douglas B. Robelen, Clerk

9